My name is Robert Bundy. I'm here with Randall Kavanaugh. We're privileged to represent Mr. Osborne, the appellant in this case, along with the Innocence Project. Mr. Osborne, the appellant, is currently incarcerated, serving a 26-year sentence for horrendous crimes, kidnapping, sexual assault and assault. Mr. Osborne has steadfastly maintained from the beginning that he is innocent of these crimes. He was not present when the crimes were committed. His presence was determined when the state got their conviction based upon a photo lineup. Initially it was the identification of Mr. Osborne and two pieces, two types of biological evidence. Some semen that was left in a condom that the victim identified as having been used by Mr. Osborne, the person she said was Mr. Osborne, and two hairs found on her clothing or at the scene. The state of the technology at the time of the trial in 1983 allowed for these items to be subjected to a DQ-alpha DNA test, which was about the same effectiveness as conventional seriology. That is, it could eliminate only one out of every six persons could be not excluded as a result of the test. Now, since that time, we have STR, short tandem repeat DNA testing that can eliminate or identify the source of the DNA contained in the biological evidence, virtually to the elimination of everybody else on the planet. The same is true, that is true of the semen that was found in the condom, but it is also true of the hairs under mitochondrial DNA testing. In other words, the technology has advanced to the point where the source of that biological evidence can be, Mr. Osborne can be absolutely excluded. Do we know if this evidence still exists? It does exist. It's contained in the evidence locker at the Anchorage Police Department. We know the background. It's a question of the 1983 application. You sound like you're making a habeas argument. Well, here on 1983, it's also indicated in the record that there's a pending state court habeas in which this very issue is being litigated. What's the status of that suit? That's been remanded to the state superior court. So it's still pending? Still pending. Okay. Doesn't Wilkinson-Dodson take care of your case? I believe it absolutely does. Doesn't it slam the door on the heck problem? I think it does, Your Honor. I think that there's absolutely no question about that. Of course, the trial judge here did not have Dodson and Wilkinson to take a look at. Insofar as there was ever any question that a set-the-stage principle was required by heck, it's been absolutely foreclosed by Wilkinson. As I understand, everybody agrees, and counsel can tell us if we're wrong, that this material, if obtained, would be subject to test, and it could go inconclusive, conclusive, or whatever. It will not show definitively, absolutely, that it's his or his not DNA. We don't know that it will affect his conviction because it would not show that it was his absolutely. We don't know what it will show. We don't know what it will show. If it's subjected to testing, it could exclude him. It could absolutely determine that it was his. It could be inconclusive, and as part of an exclusion, it could, given the state of Alaska's DNA database, absolutely pinpoint who the real perpetrator of this crime is. And that, as I understand it, is Dodson. That is Dodson. That's correct, Your Honor. And the test under heck is whether or not the remedy you now see will necessarily invalidate. Well, because, and your argument is, because we don't know what the DNA testing will produce, we do not know that the remedy you see will necessarily set aside the conviction. Precisely. See if this is so. Go ahead. Well, I was just going to ask, what do you say to the judges borrowing the language of the Fourth and Fifth Circuit in saying that setting the stage for a habeas is the functional equivalent of a Heck v. Humphrey violation? Well, to the extent that the judge relied on those circuits, which were inconsistent with the Fifth Circuit, nonetheless, Wilkinson has answered that question once and for all by the U.S. Supreme Court, that if there was any debate about that, it is now over. I'll ask this debate to give us the same answer, the same question. At the end of the day, we just say that because of Wilkinson, we have to go back to the trial court and give a chance to demonstrate that we're entitled to test that evidence. What do you say about the pursuing the same case in two courts, the Younger v. Harris problem? Well, first of all, that wasn't briefed. That wasn't relied on by the court. But nonetheless, I believe that that is not foreclosed. There isn't a Younger v. Harris problem here. I know that in the 28-J letter we got yesterday, there was a citation to a Gilbertson case. But the issue, Younger requires that there be some manner of interference with a state court proceeding. The Gilbertson case dealt with, Gilbertson v. Albright dealt with a case in which a disappointed litigant in a state administrative proceeding sued the board members. And the court said, well, there should be an abstention to see whether or not he could win on his claim that the board members unfairly considered certain evidence. This is a case in which the proceeding, if there is any, is the refusal of the district attorney to allow Mr. Osborne his access to this evidence for DNA testing. That is not a judicial proceeding. That is not a proceeding within the understanding of Younger, within the ambit of Younger. Let me ask this. What's the status of the state habeas? And is this same material sought in the state habeas? Yes. And do you have a ruling from the... We don't have a ruling from the Superior Court on remand from the State Court of Appeals. The State Court of Appeals incidentally found in its opinion, remanding, that there was no federal right to testing this DNA. If there was one, it was a state right, and they asked the Superior Court to examine that. That wasn't raised on this appeal either. That was not raised on this appeal. What question should we address on this appeal? The question to address on this appeal is what the ruling of the trial court was, which was that Heck v. Humphrey forecloses consideration of this as a 1983 case. I think we have your argument. Let's hear from the other side, and you've saved some time. Thank you. My name is Nancy Simel, and I'm here today on behalf of the state appellants in this case. David Dodson foreclosed your argument? With respect to Treiser and Heck, to the extent, and only to the extent, that Mr. Osborne is asking in this federal action, merely for release of the evidence so that it could be tested. To the extent he may, and he has in his complaint, maintained his innocence claiming that he's innocent. To the extent he may be asking, and it's not clear because I believe paragraph C of the complaint in terms of the relief request, it asks for other actions, may be asking for a declaration of innocence. No, Dodson does not. That's another day, though, isn't it? The only issue here is whether or not he's precluded from getting the evidence. If he then attempts to go forward, there would be another motion. I'm not sure that that's entirely true. All I'm saying is to the extent that he is asking only for the release of the evidence, Dodson forecloses the argument that I made in the brief. To the extent that it appears he may be asking for more, and he has claimed a Sixth Amendment violation, which is a violation of trial, a confrontation right at trial, no, Dodson does not foreclose it. But that issue is not on appeal, though. I'm not sure that that's true. Well, did you brief it? Did I brief it separately? Yes. No. But it is mentioned in several places in the brief that he appears to be maintaining his innocence, and to the extent that that's true, that is an attack, direct attack, on the conviction. Well, it obviously has to be addressed when you're talking about the difference between Hecht and Dodson, the fact that you're seeking to try to turn over to effect a conviction. But in this case, as far as I know from the briefing, all he wants to do is get a chance to see what the test shows. As I said, to the extent that is what he's asking, yes, Dodson forecloses the argument. And, you know, of course this wasn't separated out. Dodson didn't exist at the time of the brief's reply. Are you saying because of that hanging Chad, then we've got to affirm? Excuse me? No, I didn't say that. Because of that hanging issue, we have to affirm? Excuse me? Because of that hanging issue that you're bringing up, that means that the plaintiff can't get relief under Dodson before this court? That's not what I said. Okay. As I said, to the extent he may be asking only for release of the evidence, yes, Dodson forecloses the argument. But I think there's another. I think because of the state court of appeals decision in Osborne itself vacating the district court's decision, which was denying him access to the evidence, and asking the Alaska Superior Court to reconsider that and determine whether he is entitled to the action, whatever the state district attorney's office, the Anchorage district attorney's office did, no longer is a final state action. I think that the issue is no longer right, given that the Alaska Superior Court may well be granting him the exact relief that he's asking the district court for. Again, you're raising an issue that wasn't briefed. That's true. Okay. But that, as I said, the factual landscape changed. You know, I've got a simpler question. Yes? There's nothing preventing you from simply giving him this evidence. Why don't you do it? Well, there's a number of reasons for it, but we're not here to argue the merits of that today. Well, but I asked you the question. You can ask us the question, and I can give you the answer, but I believe that goes to the merits where we're not here. And the answer is long and complicated, and that's the reason I hesitated. Well, it's a fairly simple question, and this is a practical matter. We have this evidence sitting there that may or may not clear this man. Correct. You have it in your custody, and you're refusing to hand it over. How come? Because we don't think that Mr. Osborne satisfies the requirements for handing over evidence in this case. I mean, as I say, it has to do with complicated issues of fact. You know, it's a simple question, and I don't think the answer has to be that complicated. I don't get it yet. Well, be that as may, that has not been litigated yet, and I'm not willing or able, in the sense of answering the question, the context of this case. Would you take the same position with this for a death penalty case? I can answer that question because I think it depends on the facts and circumstances of the case. In other words, I don't think any time a defendant asks for evidence, under all circumstances, the state is obligated to release it. There are certain circumstances. Hold on a second. There are certain circumstances when absolutely release of the evidence is appropriate and would be done. Yeah, I didn't say obligated. Okay. And I also recognize that there are many circumstances in which evidence held by the state may legitimately be withheld by the state. For example, it may reveal the name of a confidential informant, and it may not be exculpatory, and therefore within the obligation of the state to hand it over. It may be after trial, and the protection that the state wants to give to its confidential informants overrides any other obligation to justice that the state might feel. I understand those things. Okay. This, however, is physical evidence. I understand. Pretty straightforward. Hand it over. I understand. And you don't want to do it. That's correct. And you're really not willing to tell me why, but I guess you'll tell somebody sometime. Not in this instance. Not at this time is the answer. Is it fair to say that institutionally you are precluded from handing it over? I can be even more blunt. Politically, you're precluded from handing it over. You've got a slam-dunk case here. You've got tire marks. You've got eyewitnesses, and you're going to hand over exculpatory evidence. Politically and institutionally, you can't turn it over because, as Judge Fletcher says, all it is is handing over the evidence. I understand. So institutionally, it's not going to come out. That's what you said. You're litigating. Institutionally, it will not voluntarily come out. Under this particular factual scenario, that's all I can say. Okay. Well, if you hide the ball before the trial, it's a Brady violation. What? There's no hiding the ball. If you hide the ball after the trial, you raise all these other questions. This is all after the trial, as you're well aware. This is not that situation. Correct. There's a limited amount of evidence. If it's going to be subjected to testing, it has to be under the pre-trial. If this were pre-trial, you can see that this would be a Brady obligation. Absolutely. Yeah. Without a question. So the Constitution would require you to hand it over pre-trial. But now it's post-trial, and you say you don't have to, you don't want to, and you won't do it. That's not precisely the position. As I said, the merits of this case have never been litigated, and I'm not prepared to start litigating them right now. Oh, I understand. That's not the question now in front of us. Okay. So that's all I have to say in this case. Okay. Any response? Oh, wait. That Mr. Osborne seeks only to get this evidence for testing. And insofar as the complaint had the catch-all, such other and further relief as the court may deem just, I don't think that makes this a heaviest litigation case. He sought in the complaint only to get the evidence for testing at a reputable laboratory at his own expense. More importantly, the Supreme Court has changed our whole landscape with Osborne. I mean, if Osborne wasn't there, we could be doing a lot of things. But Osborne is there. Yeah, Dodson. Yeah, Dodson. Dodson, excuse me. Right. Okay. Thank you both for your arguments. The case of Osborne v. District Attorney's Office for the Third Judicial District is now submitted for decision. The next case on the argument calendar is United States v. Cruz Agosto.
judges: Goodwin, Brunetti, W. Fletcher